Stephen Metz, Esq. VSB # 89738
Offit Kurman, P.A.
7501 Wisconsin Avenue, Suite 1000W
Bethesda, MD 20814
(240) 507-1723
smetz@offitkurman.com
*Counsel for Plaintiff Paul Gleit*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| In re: | |
| **TAYLOR MADISON FRANCOIS BODINE** | Case No. 21-11238-KHK |
| Debtor | Chapter 7 |
| **PAUL GLEIT,** | |
| Plaintiff, | |
| v. | Adv. Proc. No. 21-_____-KHK |
| **TAYLOR MADISON FRANCOIS BODINE** | |
| Defendant/Debtor. | |

### COMPLAINT TO DETERMINE
### DISCHARGEABILITY OF DEBT OWED TO PAUL GLEIT

Paul Gleit (the "Plaintiff" or "Gleit"), a creditor herein, by his undersigned counsel, and for his Complaint against the Defendant Taylor Madison Francois Bodine ("Debtor" or "Bodine") alleges as follows:

### **PARTIES**

1. Plaintiff is an individual resident of Florida.

2. The Debtor is an individual resident of Virginia.

## FACTS

3. Gleit is a businessman and investor.

4. In or about mid-May 2017, Gleit became acquainted with Debtor and her business, Francois-Bodine Consulting, which provides social referral, that is, matchmaking, services.

5. Debtor markets Francois-Bodine Consulting as the leading luxury matchmaking and elite relationship consulting firm in the Greater Washington D.C. metropolitan area and claims to do business not only in that area, but nationwide.

6. In May 2017, Gleit and Debtor had a series of conversations concerning Francois-Bodine Consulting and the matchmaking services that could be provided to Gleit. These communications included telephone conversations between Gleit and Debtor and email communications between Gleit and Debtor. In addition, Gleit reviewed Taylor's Francois-Bodine Consulting website ([www.francois-bodine.com](www.francois-bodine.com)) and other information concerning Debtor and Francois-Bodine Consulting.

7. During these conversations, Debtor told Gleit that she routinely provided matchmaking services to clients in New York, and that she travelled to New York City approximately twice a month to work from an office that she maintained in New York City for that purpose.

8. On or about May 25, 2017, Debtor emailed a proposed agreement, entitled "Francois-Bodine Consulting Personal Introductions Agreement" (the "Agreement"), to Gleit. The Agreement recites that Francois-Bodine Consulting is "a nationally based firm" that "is in the business of providing introductions to individuals to enable them to meet others for the purpose of entering into long-term romantic relationships/marriage."

9. On or about May 25, 2017, Gleit electronically signed the proposed Agreement and returned it to Debtor.

10. Pursuant to the Agreement, Gleit retained Francois-Bodine Consulting to provide him with matchmaking and social referral services (for a minimum period of two years) in consideration for a payment by Gleit of a "Consulting/Matchmaking Fee" in the amount of $35,000 (the "Fee") and a processing fee of $490.

11. The Agreement provided that the $35,000 Fee "encompasses the complete matchmaking fee for an unlimited amount of introductions."

12. The parties agreed that the $35,000 Fee could be paid in installments over time.

13. Between May 20, 2017 and October 18, 2017, Gleit made ten payments to Debtor by Visa card or wire transfer in the aggregate amount of $39,790.

14. Debtor also told Gleit that all services provided to him were within the scope of the services referred to in the parties' Agreement and therefore were not subject to additional fees or charges.

15. Gleit was never asked to pay, nor did he ever agree to pay, additional fees, in excess of the $35,000 Fee, for additional services beyond those contemplated by the parties' Agreement.

16. Gleit never requested or received additional services (other than those referred to in the parties' Agreement) from Debtor or Francois-Bodine Consulting.

17. At the beginning of November 2017, Debtor and other Francois-Bodine Consulting representatives began to demand that Gleit make additional payments to Debtor, despite Gleit's prior payment in excess of the $35,000 Fee (the last installment of which was made on October 18, 2017).

18. In November 2017, Debtor and other Francois-Bodine Consulting representatives applied high-pressure sales tactics through constant communications to Gleit through various methods, in which they knowingly misrepresented the nature and amount of the demanded additional payments.

19. In November 2017, Debtor and other Francois-Bodine Consulting representatives falsely stated to Gleit that he owed them additional fees under the parties' Agreement for, among other things, credit card reversal charges and bank fees. When making those representations, Debtor knew they were false.

20. On November 10, 2017, Debtor stated in an email to Gleit and a Francois-Bodine Consulting representative that other than $4,509 that he purportedly owed, Gleit "does not owe any more money for the duration of his time with us unless he elects for additional services."

21. On or about November 13, 2017, Debtor and Francois-Bodine Consulting provided Gleit with a proposed agreement for his signature which provided that, upon Gleit's additional payment to Taylor and Francois-Bodine Consulting of an additional $81,819, Gleit would owe Debtor and Francois-Bodine Consulting no further payments for the balance of the term of the parties' Agreement.

22. Debtor and other Francois-Bodine Consulting representatives falsely stated to Gleit that he owed them additional fees of $81,819 for, among other things, credit card reversal charges and bank fees. When making those representations, Debtor knew they were false.

23. In reliance on the misrepresentations made to him, on or about November 13, 2017, Gleit executed this proposed agreement (the "November Agreement") and returned it to Debtor and Francois-Bodine Consulting.

24. Notwithstanding the November Agreement, and despite Gleit's payment of the $81,819 referred to above, Debtor and Francois-Bodine continued to pressure Gleit to deliver additional payments to Debtor, knowing that Gleit did not actually owe any additional money.

25. In reliance on the misrepresentations made to him, and as a result of the high pressure sales techniques employed upon him by Debtor and others on behalf of Francois-Bodine Consulting between November 7 and November 28, 2017, Gleit made an additional 13 payments to Debtor in the aggregate amount of $387,414 (hereinafter "Additional Payments"), $293,456 of which were paid after Gleit signed the November Agreement.

26. Between May 25, 2017 and November 1, 2017, Debtor and Francois-Bodine Consulting provided Gleit with a total of approximately eight (8) social introductions which resulted in six (6) social dates (which took place in New York City, Washington D.C. and Florida).

27. In late November 2017 (after the November Agreement), Debtor and other Francois-Bodine Consulting representatives demanded that Gleit pay an additional $50,000 in fees.

28. Only when Gleit's counsel communicated with Debtor by email on December 1, 2017 did she withdraw the demand, claiming that the demand had been "an error" and that he was "paid in full for his two year remainder." By this time, Debtor had already defrauded Gleit out of the Additional Payments.

29. Upon realizing that Debtor and Francois-Bodine Consulting had lied to him about bank fees and credit card charges and otherwise defrauded him and had demanded and received fees well in excess of the fees contemplated by the parties' Agreement, Gleit demanded a refund of the Additional Payments, which demand was rejected by Debtor and her representatives.

30. Debtor's conduct was egregious and tortious, and upon information and belief part of a pattern of similar conduct directed at the public generally.

31. On January 12, 2018, Gleit filed a complaint against the Debtor in the United States District Court for the Southern District of New York (the "SDNY Complaint") seeking damages against the Debtor based upon the facts set forth herein. The SDNY Complaint included a count for common law fraud.

32. On July 16, 2018, Gleit and the Debtor entered into a Settlement Agreement and Release resolving the claims set forth in the SDNY Complaint (the "Settlement Agreement").

33. In Section 2.1 of the Settlement Agreement, Debtor agreed to pay Gleit $250,000. The Settlement Agreement further provides: "Francois-Bodine hereby represents and agrees that the Settlement Amount constitutes a debt which is non-dischargeable in bankruptcy pursuant to 11 U.S.C. § 523, and that she will not seek or accept discharge of that debt for any reason under any section of the United States Bankruptcy Code or any other federal, state or local law."

34. The Settlement Agreement contained provisions that allowed Gleit to obtain a judgment in the event Debtor defaulted by failing to pay Gleit.

35. On August 13, 2018, the parties filed a Stipulation of Voluntary Dismissal, thereby dismissing the SDNY Complaint.

36. Subsequently, Debtor defaulted on her payment obligations.

37. On or about April 30, 2021, Gleit filed a Motion for Summary Judgment in Lieu of Complaint against Debtor in the Supreme Court of the State of New York, County of New York (the "NY Supreme Court") for purposes of entering judgment against Debtor on account of her default under the Settlement Agreement (the "NY State Action").

38. On July 1, 2021, the NY Supreme Court entered judgment in favor of Gleit and against Debtor in the total amount of $384,400.72 (the "NY State Judgment").

39. As a direct and proximate result of the Debtor's fraudulent, willful and malicious conduct, Gleit had incurred damages in the amount of the NY State Judgment.

## Count I:
## Denial of Dischargeability Pursuant to 11 U.S.C. § 523(a)(2)(A) (Fraud)

40. Gleit incorporates, repeats, and realleges all allegations set forth in the paragraphs above.

41. The representations described herein (the "Representations") made by Debtor were false when made.

42. Debtor knew that the Representations were false.

43. Debtor made the Representations with the present intent to deceive Gleit and to induce Gleit to advance the Additional Payments.

44. Gleit reasonably and justifiably relied upon the Representations.

45. In reasonable and justifiable reliance on the Representations, Gleit advanced to Debtor the Additional Payments.

46. The Representations were material. But for the representations, Gleit would not have advanced the Additional Payments to Debtor.

47. The Representations were fraudulent.

48. The fraud committed by Debtor proximately caused Gleit to incur damages, which the NY State Court has determined to total $384,400.72.

49. The fraud committed by Debtor was willful and malicious and committed with the intent to harm Gleit.

WHEREFORE, Gleit requests that this Court award the following relief: (i) that the Court determine that Debtor is not entitled to a discharge of the NY State Judgment; (ii) that the Court award to Gleit his attorney's fees and costs in prosecuting this action; and (iii) that the Court award to Gleit such other and further relief as the Court deems proper.

## Count II:
### Denial of Dischargeability Pursuant to 11 U.S.C. § 523(a)(6)
### (Willful and Malicious Injury)

50. Plaintiff incorporates, repeats, and realleges all allegations set forth in the paragraphs above.

51. As explained above, Debtor intentionally and deliberately made the Representations described herein, which Debtor knew to be false, to obtain the Additional Payments from Gleit.

52. Debtor acted with a knowing disregard of the rights of Gleit.

53. Debtor acted with malice toward Gleit when making the false and fraudulent Representations.

54. Debtor defrauded Gleit and took the Additional Payments from Gleit.

55. The actions of Debtor caused willful and malicious injury to Gleit and to his property and caused Gleit to incur damages.

WHEREFORE, Gleit requests that this Court award the following relief: (i) that the Court determine that Debtor is not entitled to a discharge of the NY State Judgment; (ii) that the Court award to Gleit his attorney's fees and costs in prosecuting this action; and (iii) that the Court award to Gleit such other and further relief as the Court deems proper.

Respectfully submitted,

**OFFIT KURMAN, P.A.**


 /s/ Stephen Metz
Stephen Metz, Esq., VB No. 89738
7501 Wisconsin Avenue, Suite 1000W
Bethesda, MD 20814
(240) 507-1723
smetz@offitkurman.com
*Counsel for Plaintiff*

4843-2325-0939, v. 1

9