# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TAYLOR MADISON FRANCOIS BODINE | ) | Case No. 21-11238-KHK |
| | ) | (Chapter 7) |
| Debtor | ) | |
| | ) | |
| | ) | |
| PAUL GLEIT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | No. 21-01057-KHK |
| TAYLOR MADISON FRANCOIS BODINE | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

### **OPPOSITION TO DEBTOR'S MOTION TO DISMISS THE COMPLAINT**

Plaintiff, Paul Gleit (the "Plaintiff"), opposes the Motion to Dismiss the Complaint (the "Motion to Dismiss") filed by Defendant/Debtor Taylor Madison Francois Bodine (the "Debtor"), and in support thereof states as follows:

### **Preliminary Statement**

This case arises out of Debtor's reprehensible course of conduct pursuant to which Debtor swindled a total of $426,104 out of the Plaintiff through fraudulent, willful and malicious conduct after initially entering into a Consulting Personal Introductions Agreement (the "Agreement") which required Plaintiff to pay "only" $35,000 to Debtor.[1] As described in the Complaint, and as more fully described herein, Debtor and her employee/agent Megan, and her

---

[1] A copy of the Agreement is attached hereto as **Exhibit A.**

Stephen A. Metz (VSB 89738)
Offit Kurman, P.A.
7501 Wisconsin Avenue, Suite 1000W
(240) 507-1723
(240) 507-1735 (Fax)
*Counsel for Plaintiff*

attorney Mr. Jackson, made a series of misrepresentations and threats to Plaintiff (mostly in November of 2017) to induce Plaintiff to transfer additional sums to Debtor over and above the $35,000 fee Plaintiff agreed to pay.

## Argument

### I. Rule 9(b) Standard

Fed. R. Civ. P. 9(b), made applicable in this adversary proceeding pursuant to Fed. R. Bankr. P. 7009, provides: "(b) Fraud or Mistake; Conditions of Mind.  In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Accordingly, although a plaintiff must state the "who, what, when, and where" of the alleged fraud, *Zamora v. Jacobs (In re Jacobs),* 403 B.R. 565, 573 (Bankr. N.D. Ill. 2009), malice, intent, knowledge and other conditions of the Debtor's mind may be alleged generally in accordance with Fed. R. Civ. P. 8(a), made applicable pursuant to Fed. R. Bankr. P. 7008.

> Rule 9(b)'s particularity requirement is to be understood in conjunction with Rule 8(a)'s short and plan statement notice-pleading requirement. Consequently, the who, what, when, and where aspects of fraud need not be related with exact details in the complaint as a journalist would hope to relate them to the general public.  Rather, the federal pleader alleging fraud need only set forth the basic outline of the scheme, who made what misrepresentations and the general time and place of such misrepresentations, in order to adequately alert the defendant of the purported fraud he is defending against.

(internal quotations and citations omitted) *Id.* at 573-74; *see also Stoner v. Keirns (In re Keirns)*, 628 B.R. 911 (Bankr. S.D. Ohio 2021) (holding that as long as the complaint satisfies the purpose of ensuring that the defendant is given enough information to defend in a meaningful and informed manner, the complaint will be deemed to sufficiently plead the "time, place, and content of the alleged misrepresentation").

As explained by the Fourth Circuit in a case cited by Debtor, *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999),

> [T]he "circumstances" required to be pled with particularity under Rule 9(b) are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." [] The second sentence of Rule 9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive . . . . A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.

(internal citations omitted) *Id.* at 784. "'Rule 9(b)'s requirement is not intended to be an insurmountable hurdle for claimants to overcome; the complaint must give the party adequate notice of the charges – it need not marshall all of the evidence against him.'" *Gold v. Winget, et al. (In re NM Holdings Co., LLC)*, 407 B.R. 232, 261 (Bankr. E.D. Mich. 2009) *quoting Sharp v. Chase Manhattan Bank USA, N.A. (In re Commercial Fin. Servs., Inc.)*, 322 B.R. 440, 448 (Bankr. N.D. Okla. 2003). Even if a complaint fails to satisfy the Rule 9(b) requirements, courts freely give plaintiffs leave to amend to conform to the Rule 9(b) requirements. *E.g. In re NM Holdings Co., LLC*, 407 B.R. at 263. Here, Plaintiff asserts the Complaint complies with Rule 9(b). If, however, the Court finds that the Complaint does not comply, Plaintiff requests leave to file an amended complaint.

## II.     Plaintiff's Complaint Satisfies the Rule 9(b) Standard

Here, the Complaint alleges that Plaintiff and Debtor entered into the Agreement and that Plaintiff agreed to pay Debtor $35,000 for matchmaking and social referral services (for a minimum of two years). Complaint, ¶¶ 8-11. The Complaint further alleges that Plaintiff paid $39,790 to Debtor in ten installments and was not required to pay any additional fees in excess of the $35,000 fee. Complaint, ¶¶ 13-16.

The Complaint goes on to state that at the beginning of November 2017, Debtor and other Francois-Bodine Consulting representatives began to demand that Plaintiff make additional payments to Debtor, despite Plaintiff's prior payment in excess of the $35,000 fee. Complaint, ¶ 17. These demands were made by the Debtor and other Francois-Bodine Consulting representatives through high-pressure sales tactics through constant communications to Plaintiff through various methods, in which Debtor and her representatives misrepresented the nature and amount of the demanded additional payments. Complaint, ¶ 18.

The Complaint further alleges – concerning the November 2017 representations – that Debtor and her representatives falsely stated to Plaintiff that he owed them additional fees for, among other things, credit card reversal charges and bank fees. Complaint, ¶ 19. The Complaint also states that on or about November 13, 2017, the Debtor provided Plaintiff with a proposed agreement, which referenced an additional $81,819 Plaintiff supposedly owed to Debtor for, among other things, credit card reversal charges and bank and further alleges that the representations that Plaintiff owed these additional amounts were false and that Debtor knew they were false. Complaint, ¶¶ 21-22.[2]

The Complaint further alleges that between November 7 and November 28, 2017, the Debtor and others on Debtor's behalf, made additional false representations in the form of high

---

[2] A true and correct copy of the November 2017 Agreement is attached hereto as **Exhibit B**.

pressure sales techniques to coerce Plaintiff into paying Debtor an additional $387,414. Complaint, ¶¶ 24-25.

The types of allegations made in the Complaint are similar to the types of allegations the plaintiff made in *Zamora*, and which the court found satisfied the Rule 9(b) standard. In *Zamora*, the plaintiff alleged debtor made false representations about plaintiff's pay (that debtor would make good on certain NSF checks, which plaintiff relied on to continue rendering services). *Zamora*, 403 B.R. at 574. The plaintiff further alleged that debtor knew there were insufficient funds in the account to cover the paychecks and that debtor knew he would not make good on the checks. *Id.* at 575. In denying the debtor's motion to dismiss, the court reasoned:

> Jacobs [the debtor] complains that the time, place, or the contents of the false representations were not alleged with sufficient particularity. The court disagrees. Granted, Zamora [the plaintiff] does not supply exact dates, or locations or a word for word recitation of the representation, but such detail is unnecessary. Zamora sets forth a **time frame** when the representations were made, *i.e.*, the months leading to the closing of the business **in early August of 2005**. The representations were made by Jacobs in the context of Zamora's employment and their content is adequately spelled out. The allegations are particular enough to adequately place Jacobs on notice of the purported fraud he needs to defend against.

(emphasis added) *Id.* at 575.

Like the plaintiff in *Zamora*, Plaintiff's Complaint sets forth the time frame when representations were made (*i.e.,* mostly in October and November of 2017). The content of the alleged false representations is also spelled out, although not word for word, which is not required. The Complaint adequately describes the misrepresentations by explaining that Debtor and her representatives falsely stated that Plaintiff owed Debtor hundreds of thousands of dollars in fees, when in fact Plaintiff did not owe Debtor any additional sums.[3] The Complaint also adequately describes the "who" by explaining that the Debtor and certain representatives made false representations to Plaintiff.[4]

The bottom line is that the Complaint provides more than enough information "to ensure that the defendant is given enough information to defend in a meaningful and informed manner." *In re Keirns*, 628 B.R. at 919 (denying motion to dismiss § 523(a)(2)(A) complaint). Moreover, the Complaint, and this Opposition, reveal that Plaintiff "has substantial prediscovery evidence" of the facts that support Plaintiff's fraud claim against Debtor. *See Harrison*, 176 F.3d at 784.

---

[3] By referring to Debtor's "representatives," the Complaint is in essence alleging that the Debtor made representations through others. This satisfies the "who" requirement of Rule 9(b). If the Court finds it does not, then the Court should grant Plaintiff leave to amend to add specific names as described in the next footnote of this Opposition.

[4] A copy of a long string of text messages is attached hereto as **Exhibit C** (the "Text Messages"). Plaintiff includes this exhibit, not to concede that the exact words needed to be included in the Complaint, but to show the Court some of the specific communications Plaintiff received to induce him to pay hundreds of thousands of additional sums to Debtor. The Text Messages were exchanged among Plaintiff, Debtor, Debtor's assistant Megan and Debtor's attorney Mr. Jackson in October and November of 2017. A copy of Debtor's Responses to Plaintiff's Requests for Admission dated May 18, 2018 is also attached hereto as **Exhibit D** (the "RFA Responses"). The RFA Responses admit, among other things, Plaintiff's payments to Debtor, and Debtor's receipt of all of the payments, with specific dates, totaling $426,104. The Text Messages generally correspond to the payments (and payment dates) referenced in the RFA Responses. In the Text Messages, it becomes very clear that Plaintiff was constantly asking for confirmation that if he paid $x, he would be done with his obligations to Debtor, followed by constant additional demands for money. In Debtor's Motion to Dismiss, she argues the Complaint does not always specify the "nature" of the alleged purpose of the additional payments. That is the point here. There was no actual or legitimate purpose of the additional payments. Debtor simply demanded payments, as is evident in the Text Messages, based on continued demands that Plaintiff needed to pay more to be "squared away," and even that Debtor had obtained, or would obtain, a judgment against Plaintiff if he did not pay more money to the Debtor. The Text Messages further reference some sort of accrued interest allegedly due and owing of $28,500. The Text Message also contain certain texts with deadlines for receipt of additional funds, along with threats to Plaintiff if Plaintiff did not timely comply.

In Debtor's Motion to Dismiss, she argues that the Complaint does not satisfy the Rule 9(b) standard because it includes "among other things" language in paragraph 22 and "otherwise defrauded him" language in paragraph 29.  The inclusion of that language in the Complaint does not change the fact that the Complaint contains sufficient factual allegations as to the "who, what, when, and where" of the misrepresentations that serve as the basis for Plaintiff's claims against Debtor.

In Debtor's Motion to Dismiss, Debtor also argues that the Complaint does not contain enough specificity concerning the allegations about the misrepresentations concerning claims that Plaintiff owed Debtor money for credit card charges and bank fees.  Not so.  The Complaint does state the who (Debtor and her representatives), on what dates (in October and November of 2017), what amounts were claimed (the Additional Payments of $387,414), and what was said by each speaker (that amounts were owed for credit card charges and bank fees).  As stated in the *Zamora* decision, the Complaint need not contain a word for word recitation of the representation.  *Zamora*, 403 B.R. at 575.

Debtor goes on the argue that the Complaint should contain additional allegations as to why the statements were fraudulent as opposed to stating that the statements were intentionally false.  On this argument, Rule 9(b) is clear that allegations concerning the Debtor's intent to deceive may be alleged generally.

Next, Debtor argues the Complaint should contain additional allegations as to the justifiable reliance element.  Again, the factual allegations in the Complaint concerning Plaintiff's reliance pertain to Plaintiff's "condition" of his mind and may be stated generally.  Rule 9(b)'s particularity requirements do not apply.

Finally, Debtor argues Plaintiff fails to assert scienter with specificity. Again, because scienter pertains to Debtor's intent to deceive, it constitutes a "condition" of her mind and need not be stated with particularity.

### III. Conclusion

For the reasons stated here, the Court should deny Debtor's Motion to Dismiss.

Respectfully submitted,

**OFFIT KURMAN, P.A.**

By: /s/ Stephen A. Metz
Stephen A. Metz (VSB 89738)
7501 Wisconsin Avenue, Suite 1000W
Bethesda, Maryland 20814
TEL: (240) 507-1723
FAX: (240) 507-1735
Email: smetz@offitkurman.com
*Counsel for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2021, I filed a true and correct copy of the foregoing Opposition with the Clerk of the Bankruptcy Court using the CM/ECF system, which will send a notification of electronic filing to all registered ECF users appearing in this adversary proceeding.

/s/ Stephen A. Metz
Stephen A. Metz

4888-8084-5828, v. 1