# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL GLEIT,<br><br>Plaintiff,<br><br>-against-<br><br>TAYLOR FRANCOIS-BODINE, individually and d/b/a FRANCOIS-BODINE CONSULTING,<br><br>Defendant. | Case No. 18-cv-00311-GBD-KP<br><br>DEFENDANT'S RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSION |

Defendant Taylor Francois-Bodine, individually, and d/b/a Francois-Bodine Consulting responds and objects to Plaintiff's Request for Admissions ("Requests") as set forth below. The following responses are made solely for the purposes of this action. Each response is subject to all objections as to relevance, materiality, and admissibility, and to any and all objections on any ground that would require exclusion of any response if it were introduced in court.

No incidental or implied admissions are intended by these responses. The fact that Defendant has objected or responded to any Request shall not be deemed an admission that Defendant accepts or admits the existence of any facts set forth or assumed by such Request or that such objection or response constitutes admissible evidence. The fact that Defendant has responded to part or all of any Request is not intended to and shall not be construed to be a waiver by Defendant of any part of any objection to any Request.

The responses and objections are made on the basis of information and writings currently available to and located by Defendant upon reasonable investigation. Defendant expressly reserves the right to modify, revise, supplement, or amend their responses as they deem appropriate.

## GENERAL OBJECTIONS

1. Defendant objects to the Requests to the extent that they seek information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other recognized privilege.

2. Defendant objects to the Requests to the extent that they require Defendant to search for and produce documents or information that are not within its possession, custody, or control.

3. Defendant objects to the Requests to the extent they seek information or documents that cannot be located by Defendant after reasonably diligent inquiry, are readily available from public sources, or are available to Plaintiff from another source or by other means that are more convenient, more appropriate, less burdensome, or less expensive.

4. Defendant objects to the Requests to the extent they seek legal conclusions and/or would require Defendant to reach a legal conclusion in order to prepare a response.

5. Defendant objects to the Requests to the extent they are argumentative, prejudicial, improper, incorrect, vague, and/or ambiguous.

6. Defendant objects to the Definitions to the extent that any Definition implies a legal conclusion.

## RESPONSES TO THE REQUESTS TO ADMIT

1. Defendant Taylor Francois-Bodine ("Francois-Bodine") is the sole owner and a principal executive of a business she operated at various times including between May 2017 and December 1, 2017, under the name Francois-Bodine Consulting.

   Answer: Admit.

2. Francois-Bodine markets Francois-Bodine Consulting as the leading luxury match-making and elite relationship consulting firm in the Great Washington DC Metropolitan Area, and claims to do business not only in that area, but nationwide.

2

Answer: Admit that Francois-Bodine Consulting ("FBC") consults with and coaches clients who are located within and without the Greater Washington DC Metropolitan Area. While FBC does have an informational website, Ms. Francois-Bodine denies that FBC performs marketing generally, and denies that FBC markets itself "the leading luxury match-making and elite relationship consulting firm in the Great Washington DC Metropolitan Area" specifically.

3. In May 2017, Gleit and Francois-Bodine had a series of conversations concerning Francois-Bodine Consulting and the match-making services that could be provided by Francois Bodine to Gleit.

Answer: Admit that Gleit and Francois-Bodine had a series of conversations concerning FBC and the services of various kinds, including match-making, that could be provided by FBC to Gleit.

4. On or about May 25, 2017, Francois-Bodine emailed a proposed agreement, entitled "Francois-Bodine Consulting Personal Introductions Agreement" (the "Agreement"), to Gleit.

Answer: Admit.

5. On or about May 25, 2018, Gleit electronically signed the proposed Agreement and returned it to Francois-Bodine.

Answer: Admit.

6. Annexed hereto as Exhibit 1 is a true, correct and genuine copy of the executed Agreement delivered by Gleit to Francois-Bodine.

Answer: Admit.

7. Gleit and Francois-Bodine agreed that the $35,000 Fee referred to in the Agreement could be paid in installments over time.

Answer: Admit that Defendant agreed that Gleit could divide the total payment due in multiple transactions, provided that the full $35,000 fee was made prior to his participation in any meetings or other social events. Defendant further admits that Mr. Gleit requested to divide the

3

$35,000 fee among multiple transactions so that the full amount did not reflect on his credit card as a single transaction.

8. On or about November 13, 2017, Francois-Bodine provided Gleit with a proposed agreement for his signature which provided that, upon Gleit's payment to Francois-Bodine of an additional $81,819, Gleit would owe Francois-Bodine no further payments for the balance of the terms of the parties' Agreement.

Answer: Admit that Defendant provided Gleit with a proposed agreement for his signature; admit that no further payments for services already-contracted for would be due; and deny that the Agreement prohibited payment for or the rendering of additional services requested and agreed to by Mr. Gleit beyond those covered by that agreement.

9. On or about November 13, 2017, Gleit executed the proposed agreement provided to him by Francois-Bodine (the "November Agreement") and returned it to Francois-Bodine.

Answer: Admit.

10. Annexed hereto as Exhibit 2 is a true, complete and genuine copy of the executed November Agreement delivered by Gleit to Francois-Bodine.

Answer: Admit.

11. On May 20, 2017, Gleit paid Francois-Bodine $8,000 by means of a charge on his J.P. Morgan VISA credit card.

Answer: Admit.

12. On May 20, 2017, Gleit paid Francois-Bodine $2,000 by means of a charge on his J.P. Morgan VISA credit card.

Answer: Admit.

13. On May 31, 2017, Gleit paid Francois-Bodine $2,900 by means of a charge on his J.P. Morgan VISA credit card.

Answer: Admit.

14. On June 9, 2017, Gleit paid Francois-Bodine $3,000 by means of a charge on his J.P. Morgan VISA credit card.

Answer: Admit.

4

15. On June 14, 2017, Gleit paid Francois-Bodine $2,000 by means of a charge on his J.P. Morgan VISA credit card.

    Answer: Admit.

16. On August 1, 2017, Gleit paid Francois-Bodine $1,800 by means of a charge on his J.P. Morgan VISA credit card.

    Answer: Admit.

17. On August 2, 2017, Gleit paid Francois-Bodine $3,900 by means of a charge on his J.P. Morgan VISA credit card.

    Answer: Admit.

18. On August 2, 2017, Gleit paid Francois-Bodine $2,900 by means of a charge on J.P. Morgan VISA credit card.

    Answer: Admit.

19. On August 3, 2017, Gleit paid Francois-Bodine $4,300 by means of a charge on his J.P. Morgan VISA credit card.

    Answer: Admit.

20. On August 3, 2017, Gleit received a credit on his J.P. Morgan VISA credit card, referencing Francois-Bodine, in the amount of $1,100.

    Answer: Admit that a credit was issued to Gleit in the amount of $1,100, but deny sufficient knowledge and information to know how the credit on Gleit's private credit card statement was described.

21. The net total amount of the ten (10) payments made by Gleit to Francois-Bodine by means of charges on Gleit's J.P. Morgan VISA credit card is $29,700.

    Answer: Admit that the sum of the dollar amounts in requests numbered 11 to 20 is $29,700.

22. On October 18, 2017, Gleit paid Francois-Bodine $8,990 by means of a wire transfer from his J.P. Morgan account.

    Answer: Admit.

23. On November 3, 2017, Gleit paid Francois-Bodine $7,300 by means of a wire transfer from his J.P. Morgan account.

5

Answer: Admit.

24. On November 10, 2017, Gleit paid Francois-Bodine $32,981 by means of a wire transfer from his J.P. Morgan account.

Answer: Admit.

25. On November 10, 2017, Gleit paid Francois-Bodine $4,509 by means of a wire transfer from his J.P. Morgan account.

Answer: Admit.

26. On November 13, 2017, Gleit paid Francois-Bodine $49,168 by means of a wire transfer from his J.P. Morgan account.

Answer: Admit.

27. On November 14, 2017, Gleit paid Francois-Bodine $49,456 by means of a wire transfer from his J.P. Morgan account.

Answer: Admit.

28. On November 14, 2017, Gleit paid Francois-Bodine $17,000 by means of a wire transfer from his J.P. Morgan account.

Answer: Admit.

29. On November 14, 2017, Gleit paid Francois-Bodine $10,000 by means of a wire transfer from his J.P. Morgan account.

Answer: Admit.

30. On November 16, 2017, Gleit paid Francois-Bodine $49,000 by means of a wire transfer from his J.P. Morgan account.

Answer: Admit.

31. On November 16, 2017, Gleit paid Francois-Bodine $17,000 by means of a wire transfer from his J.P. Morgan account.

Answer: Admit.

32. On November 17, 2017, Gleit paid Francois-Bodine $22,500 by means of a wire transfer from his J.P. Morgan account.

Answer: Admit.

6

33. On November 20, 2017, Gleit paid Francois-Bodine $48,000 by means of a wire transfer from his J.P. Morgan account.

    Answer: Admit.

34. On November 21, 2017, Gleit paid Francois-Bodine $52,000 by means of a wire transfer from his J.P. Morgan account.

    Answer: Admit.

35. On November 28, 2017, Gleit paid Francois-Bodine $28,500 by means of a wire transfer from his J.P. Morgan account.

    Answer: Admit.

36. The total amount of the fourteen (14) wire transfers from Gleit's J.P. Morgan account to Francois-Bodine is $396,404.

    Answer: Admit.

37. The total amount of Gleit's twenty-four (24) payments to Francois-Bodine is $426,104.

    Answer: Admit.

38. Annexed hereto as Exhibit 3 is a true, complete and genuine copy of a series of email messages between Gleit, Francois-Bodine, and her representative (Megan), dated November 10-13, 2017.

    Answer: Admit that Exhibit 3 is true and genuine as to that portion of the exchange, dated November 10-13, 2017, reproduced, but deny that it is a complete copy of a series of email messages among Gleit, Francois-Bodine, and her representative (Megan).

39. Annexed hereto as Exhibit 4 is a true, complete and genuine copy of a series of text messages between Gleit, Francois-Bodine and her representative, Megan.

    Answer: Admit that Exhibit 4 is true and genuine as to that portion of the exchange reproduced, but deny that it is a complete copy of a series of text messages among Gleit, Francois-Bodine and her representative, Megan.

40. Annexed hereto as Exhibit 5 is a true, complete and genuine copy of a series of text messages between Gleit and Francois-Bodine.

7

<u>Answer</u>: Admit that Exhibit 5 is true and genuine as to that portion of the exchange reproduced, but deny that it is a complete copy of a series of text messages between Gleit and Francois-Bodine.

41. Between May 25, 2017 and November 1, 2017, Francois-Bodine provided Gleit with a total of eight (8) social introductions which resulted in six (6) social dates.

<u>Answer</u>: Admit that Defendant organized and consulted as to eight social introductions, but deny that such introductions "resulted in six (6) social dates." Defendant states that two additional meetings were in the process of being planned, but were not completed due to Gleit's express termination of further services and that one or more of the social introductions also resulted in Gleit's request for enhanced services, including coaching.

Dated: Leesburg, Virginia  
May 18, 2018

TAYLOR FRANCOIS-BODINE

*[signature]*

42779 Travers Run  
Leesburg, VA 20176  
tfrancois16@gmail.com  
Tel: 202-510-2298

*Pro se defendant*

8